# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ALYCE T. CONLON,  Plaintiff,  v.  INTERVARSITY CHRISTIAN FELLOWSHIP/USA, FRED BAILEY and MARC PAPAI, Individually and Personally,  Defendants. | JUDGE GORDON J. QUIST  CASE NO. 1:13-CV-01111 |

Edward L. White, III (P62485)
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
(Tel) 734-680-8007
ewhite@aclj.org

David A. French
Abigail A. Southerland
Michelle K. Terry
AMERICAN CENTER FOR LAW & JUSTICE
118 Front Street, Ste. 116-19
Franklin, Tennessee 37064
(Tel) 800-296-4529
dfrench@aclj.org
asoutherland@aclj.org
mkterry@aclj.org

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants InterVarsity Christian Fellowship/USA, Fred Bailey, and Marc Papai, by and through counsel, submit this Memorandum of Law in support of their Motion to Dismiss this case for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

    I.    Background .................................................................................................................. 1

LEGAL ARGUMENT .............................................................................................................. 3

    II.    Plaintiff's Complaint Should be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State a Claim Upon Which Relief Can be Granted ......................................... 3

        a.  Relevant Legal Standards ..................................................................................... 3

        b.  The Ministerial Exception Precludes Application of Title VII of the Civil Rights Act of 1964 and the Elliot Larsen Civil Rights Act for Discrimination to Claims Concerning the Employment Relationship Between a Religious Institution and its Ministers .............................................................................................................. 4

        c.  Because IVCF Is a Religious Institution and Plaintiff Held a Ministerial Position at IVCF, Her Employment Discrimination Claim Against IVCF Must Fail. ........ 6

            i.  *InterVarsity Christian Fellowship Is a Religious Institution* ..................... 6

            ii.  *The Spiritual Formation Specialist Position is a Ministerial Position* ...... 7

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Federal Case Law**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 4

*Cannata v. Catholic Diocese of Austin,* 2012 U.S. App. LEXIS 22114 (5th Cir. 2012) ......... 8, 10

*Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223 (6th Cir. 2007) .................................. 6-8, 11

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,

    132 S. Ct. 694 (2012) ............................................................................... 1, 5, 7, 8, 9-11

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94 (1952) .................. 4

*Morrison v. National Australia Bank Ltd.*, 561 U.S. __ (2010) ........................................... 6

*Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*,

    819 F.2d 875 (9th Cir. 1987) ............................................................................... 4

*Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985) .......... 6-8

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.,* 363 F.3d 299 (4th Cir. 2004) ............. 6-7

*Watson v. Jones*, 80 U.S. 679 (1872) .................................................................................. 4

**State Case Law**

*Weishuhn v. Catholic Diocese*, 756 N.W.2d 483 (Mich. Ct. App. 2008) ...................................... 5

**Constitutions**

U.S. Const. amend. 1 ............................................................................................................. 4

**Federal Statutes**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 3-4

**Other Authorities**

INTERVARSITY CHRISTIAN FELLOWSHIP/USA, http://www.intervarsity.org
    (last visited Nov. 14, 2013) ............................................................................................ 1

INTERVARSITY CHRISTIAN FELLOWSHIP/USA, Our Purpose,
    http://www.intervarsity.org/about/our/our-purpose (last visited Nov. 14, 2013) ............... 1

## INTRODUCTION

This case involves a dispute between Alyce T. Conlon ("Plaintiff") and her former employer, InterVarsity Christian Fellowship/USA ("IVCF"), an evangelical organization, and two of Plaintiff's former supervisors, Fred Bailey and Marc Papai (collectively, "Defendants"). Plaintiff disagrees with an employment decision made by Defendants and has asked the Court to intervene in a religious organization's employment matter.

This Court should grant Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) because Plaintiff's complaint fails to state any legally cognizable injury that is redressable in civil court. The complaint raises issues between a religious institution and a minister once employed by such an entity. These issues implicate the doctrine of ecclesiastical abstention under the United States Constitution, for which there is no remedy available in this Court. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 705 (2012).

### I.    Background

InterVarsity Christian Fellowship is "an evangelical campus mission serving students and faculty on college and university campuses nationwide." Its "vision is to see students and faculty transformed, campuses renewed and world changers developed[,]" and its purpose "is to establish and advance at colleges and universities witnessing communities of students and faculty who follow Jesus as Savior and Lord: growing in love for God, God's Word, God's people of every ethnicity and culture and God's purposes in the world." INTERVARSITY CHRISTIAN FELLOWSHIP/USA, http://www.intervarsity.org (last visited Nov. 14, 2013), INTERVARSITY CHRISTIAN FELLOWSHIP/USA, Our Purpose, http://www.intervarsity.org/about/our/our-purpose (last visited Nov. 14, 2013).

Plaintiff Alyce Conlon joined InterVarsity staff as a Campus Staff Member in September 1986. After ten years in this position, she moved into a special role as Evangelism

1

Specialist. After seven years in that role, Plaintiff transitioned into her final role with InterVarsity as a Spiritual Formation Specialist. Plaintiff was dismissed from IVCF employment effective December 15, 2011. *See* Compl. ¶¶ 11-17, Doc 1-3.

As a Spiritual Formation Specialist, Plaintiff played an integral role in the fulfillment of IVCF's distinctly religious mission to college students and faculty. Specifically, she aided others in their cultivation of "intimacy with God and growth in Christ-like character through personal and corporate spiritual disciplines . . . ." Exh. 1. IVCF's mission to and concern for college students and faculty does not end with the first step of faith (conversion), but is merely a foundation for developing patterns of lifelong fellowship with God and adhering to spiritual disciplines that include prayer, fasting and study, submission and service, and confession and worship, to name a few. *Id*.

Spiritual Formation Specialists at InterVarsity are tasked with assisting in designing prayer and formation retreats and incorporating spiritual formation activities into their team's lives. According to the position description for Spiritual Formation Specialists, they are to offer regular intercession (prayer) for their directees and staff team as well as providing resources to staff for deeper prayer lives. Exh. 2.

A condition of Plaintiff's employment was that she earn certification in Spiritual Direction, *id.*, which she satisfied by completing the Shalem Institute's Spiritual Guidance Program in 2005. This program included participation in group exercises, one-to-one guidance, at-home study in books and specific study materials, and written papers and reports. Exhs. 3 & 4.

As Spiritual Formation Specialist, Plaintiff's job functions included religious leadership and oversight. Exh. 2. Plaintiff participated in an area team, where she helped set the religious vision and direction for the team and provided leadership as requested in specific ministry areas.

2

*Id*. She led in ministering to and counseling for the staff who served students and faculty on campuses in her area. Plaintiff also participated in administration and fund development, which included setting up schedules and venues for meetings with directees, participating in meetings with donors, filing expense reports, and other administrative tasks. *Id*.

In addition, Plaintiff provided training, resources, and pastoral care and development within her focused area of ministry for InterVarsity staff. Exh. 2. Occasionally, she led prayer teams at local conferences. She was also required to meet and pray with other directors and to be in spiritual direction herself. *Id*. In other words, Plaintiff was to continually maintain her personal relationship with Christ and ensure that her own character was in line with the religious principles espoused by IVCF – those same principles that she encouraged her fellow ministry staff to follow. Within the InterVarsity organization, spiritual direction is offered to staff seeking to grow in Christ and to learn how to reflect the image of Christ in their daily lives and ministry. In her confidential sessions with IVCF staff, Plaintiff's role was to listen, discern, and pray in order to make suggestions to individual employees about the direction they should be moving in their lives.

Plaintiff Alyce Conlon alleges she was dismissed from her position based on her gender and her marital status. Compl. at ¶ 1. As set forth below, however, the ministerial exception precludes this Court from granting Plaintiff her requested relief.

## LEGAL ARGUMENT

**II. Plaintiff's Complaint Should be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State a Claim Upon Which Relief Can be Granted.**

### a. Relevant Legal Standards

Federal Rule of Civil Procedure 12(b)(6) provides,

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> > (6) failure to state a claim upon which relief can be granted . . . .

Fed. R. Civ. P. 12(b)(6).

"Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While a court must assume as true the facts alleged in a complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

The First Amendment to the U.S. Constitution states, in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. 1. The "doctrine of ecclesiastical abstention . . . provides that civil courts may not redetermine the correctness of an interpretation of [a] canonical text or some decision relating to government of the religious polity." *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875, 878, n.1 (9th Cir. 1987); *see also Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94 (1952); *Watson v. Jones*, 80 U.S. 679 (1872).

> **b. The Ministerial Exception Precludes Application of Title VII of the Civil Rights Act of 1964 and the Elliot Larsen Civil Rights Act for Discrimination to Claims Concerning the Employment Relationship Between a Religious Institution and its Ministers.**

Plaintiffs' complaint raises issues involving ministerial employment decisions for which a remedy is unavailable in civil court. The doctrine of ecclesiastical abstention—rooted in the First Amendment—prevents civil courts from intervening in the internal affairs of churches, and has been extended to apply to other religious entities. As such, this Court's only recourse is to

dismiss the complaint in its entirety for failure to state any claim upon which relief can be granted.

Since the passage of Title VII of the Civil Rights Act of 1964 and other employment discrimination laws, courts have uniformly recognized the existence of a "'ministerial exception,' grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 705 (2012). The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The ministerial exception is grounded in both clauses of the First Amendment. *Id.* at 702 ("The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own."). Furthermore, this exception applies to Title VII and to the Elliot Larsen Civil Rights Act for Discrimination. *See Weishuhn v. Catholic Diocese*, 756 N.W.2d 483, 497 (Mich. Ct. App. 2008) ("[T]he ministerial exception exists in Michigan. This exception bars discrimination claims where religious employers employ or have employed plaintiffs with religious positions. . . . The exception 'provides maximum protection of the First Amendment to the free exercise of religious beliefs.'" (citations omitted)).

As the Supreme Court stated in *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, "[b]oth [the Establishment Clause and the Free Exercise Clause] bar the government from interfering with the decision of a religious group to fire one of its ministers." *Hosanna-Tabor*, 132 S. Ct. at 702. In his concurrence, Justice Alito provided further explanation:

> The First Amendment protects the freedom of religious groups to engage in certain key religious activities, including the conducting of worship services and

> other religious ceremonies and rituals, as well as the critical process of communicating the faith. Accordingly, religious groups must be free to choose the personnel who are essential to the performance of these functions.

*Id.* at 711.

The ministerial exception operates as an affirmative defense to an otherwise cognizable claim. *Id.* at 709 (citing *Morrison v. National Australia Bank Ltd.*, 561 U.S.__ (2010) (the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief'")).[1] Importantly, the exception is not limited to a religious organization's ordained or designated ministers. For years, courts have recognized that the doctrine to bar employment discrimination claims extends beyond an ordained minister within a religious organization. It is instead based upon the function of the plaintiff's employment rather than the fact of ordination. *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223 (6th Cir. 2007) (citing *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985)).

### c. Because IVCF Is a Religious Institution and Plaintiff Held a Ministerial Position at IVCF, Her Employment Discrimination Claim Against IVCF Must Fail.

#### i. *InterVarsity Christian Fellowship Is a Religious Institution.*

In *Hollins v. Medical Healthcare, Inc.*, the Sixth Circuit court stated that "in order to invoke the [ministerial] exception, an employer need not be a traditional religious organization such as a church, diocese, or synagogue, or an entity operated by a traditional religious

---

[1] Prior to the Supreme Court's decision in *Hosanna-Tabor*, circuits were split as to whether the ministerial exception served as a jurisdictional bar or an affirmative defense in civil court. The Sixth Circuit considered the exception to be a bar for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). *See Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007) ("The ministerial exception, a doctrine rooted in the First Amendment's guarantees of religious freedom, precludes subject matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees, based on the institution's constitutional right to be free from judicial interference in the selection of those employees."). In *Hosanna-Tabor*, the Supreme Court settled the circuit split, deciding that the ministerial exception serves as an affirmative defense. 132 S. Ct. at 709.

organization." 474 F.3d at 225. The court echoed a Fourth Circuit decision which found that "the exception has been applied to claims against religiously affiliated schools, corporations, and hospitals by courts ruling that they come within the meaning of a 'religious institution.'" *Id*. (citing *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.,* 363 F.3d 299, 309-10 (4th Cir. 2004)). Essentially, the test to determine if an institution can be considered religious for the purposes of the ministerial exception is whether "'that entity's mission is marked by clear or obvious religious characteristics.'" *Id*. (quoting *Shaliehsabou*, 363 F.3d at 310).

As previously stated, IVCF is "an evangelical campus mission serving students and faculty on college and university campus." IVCF's purpose "is to establish and advance at colleges and universities witnessing communities of students and faculty who follow Jesus as Savior and Lord: growing in love for God, God's Word, God's people of every ethnicity and culture and God's purposes in the world." IVCF's goal is to spread the religious beliefs held by the organization and to cultivate faith in those beliefs in the students they reach on college campuses. As IVCF is undoubtedly an "entity . . . marked by clear or obvious religious characteristics," it is, as a religious institution, entitled to protection under the ministerial exception.

### ii. *The Spiritual Formation Specialist Position is a Ministerial Position.*

Based on the Supreme Court's ruling in *Hosanna-Tabor*, an employee's position during the time of employment does not need to be one of an ordained minister to qualify as a "minister" under the exception. 132 S. Ct. at 707. Various circuit courts have also found that

employees other than ordained ministers can hold positions in religious institutions that may be considered ministerial.[2] In *Hollins*, the Sixth Circuit court stated

> [C]ourts have considered a particular employee to be a "minister" for purposes of the ministerial exception based on the function of the plaintiff's employment position rather than the fact of ordination. As a general rule, the ministerial exception will be invoked if "the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship."

*Hosanna-Tabor*, 132 S. Ct. at 707 (citing *Rayburn*, 772 F.2d at 1169) (internal citations omitted).

The Fifth Circuit, in *Cannata v. Catholic Diocese of Austin*, examined this question and found that an employee whose primary responsibilities included playing the piano at Mass, "keeping the books, running the sound system, and doing custodial work" was a minister for purposes of the ministerial exception. 2012 U.S. App. LEXIS 22114, *20 (5th Cir. 2012) (stating "Hosanna-Tabor's rejection of a bright-line test likely reflects the diversity of religious practice in this country . . . it may not be possible to develop a one-size fits all approach to the ministerial exception). Following the example of the *Hosanna-Tabor* Court, the Fifth Circuit held that the former employee was nonetheless a "minister" because in his duties at the church he "played an integral role in the celebration of Mass and that by playing the piano during services, [he] furthered the mission of the church and helped convey its message to the congregants." *Id*. at *22.

The Supreme Court in *Hosanna-Tabor* ordered that a lawsuit brought by a "called" teacher against a Lutheran Church and School be dismissed pursuant to the First Amendment and

---

[2] *See Hollins*, 474 F.3d at 226 (holding that the ministerial exception applies to a resident in a Methodist Hospital's clinical pastoral education program) (citing *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985) (applying ministerial exception to associate in pastoral care); *E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795 (4th Cir. 2000) (applying exception to a director of music); *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698 (7th Cir. 2003) (applying exception to Hispanic Communications Director for the Diocese of Chicago)).

the ministerial exception recognized thereunder. 132 S. Ct. at 709. The question presented to the Court was whether a "called" teacher, Cheryl Perich, at the Hosanna-Tabor Evangelical Lutheran Church and School was a minister and therefore barred from bringing her employment discrimination claims against the Church and School, where her religious duties only consumed approximately forty-five (45) minutes of her day.

In its analysis of whether Perich could be considered a minister, the Court stated:

> Every Court of Appeals to have considered the question has concluded that the ministerial exception is not limited to the head of a religious congregation, and we agree. We are reluctant, however, to adopt a rigid formula for deciding when an employee qualifies as a minister. It is enough for us to conclude . . . that the exception covers [the employee at issue in this case], given all the circumstances of her employment.

*Hosanna-Tabor*, 132 S. Ct. at 707.

With this in mind, the Court considered, *inter alia*, the following facts: Perich's title of a minister showed that she had completed religious training, she had participated in a formal commissioning to become a "called" teacher, she had obtained the support of her local Synod, and had to pass an examination before the six-year process was complete. *Id.* at 707. Additionally, "Perich's job duties reflected a role in conveying the Church's message and carrying out its mission. Hosanna-Tabor expressly charged her with 'leading others toward Christian maturity' and 'teaching faithfully the Word of God . . . .'" *Id.* at 708. Reversing the judgment of the Court of Appeals for the Sixth Circuit, the Supreme Court found that Perich was a minister for purposes of the ministerial exception. *Id.* The Court noted three errors made by the lower court in reaching a "contrary conclusion." *Id.* "First, the Sixth Circuit failed to see any relevance in the fact that Perich was a commissioned minister . . . that significant religious training and a recognized religious mission underlie the description" of her position. *Id.* "Second, the Sixth Circuit gave too much weight to the fact that lay teachers at the school performed the

9

same religious duties as Perich." *Id.* Third, too much emphasis was placed on Perich's performance of non-religious duties. *Id.* (rejecting the EEOC's position that the ministerial exception should be limited to those employees who perform exclusively religious functions).

In his concurrence, Justice Alito confirmed that the exception is not based upon the official title held by the employee (or former employee), but instead, upon the functions of the plaintiff's employment.[3]

> The "ministerial" exception . . . should apply to any "employee" who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or teacher of its faith. If a religious group believes that the ability of such an employee to perform these key functions has been compromised, then the constitutional guarantee of religious freedom protects the group's right to remove the employee from his or her position.

*Id*. at 712.

Based upon the Court's decision in *Hosanna-Tabor*, bright-line tests previously used to determine whether an employee could be considered a minister are no longer valid. *See Cannata v. Catholic Diocese of Austin*, 2012 U.S. App. LEXIS at *18 (holding that the three-part test previously used by the Fifth Circuit is now invalid).

Applying the analysis employed by the Court in *Hosanna-Tabor*, the ministerial exception clearly applies to Plaintiff's position as a Spiritual Formation Specialist. In this position, Plaintiff was required to, and did in fact, obtain her certification in Spiritual Direction – a program which took over two years to complete. As a Spiritual Formation Specialist, Plaintiff was responsible for leading IVCF staff and equipping them to carry out IVCF's mission. She provided staff training, resources, and pastoral care and development within her focused area of ministry. Her specific duties included the following:

---

[3] Justice Alito reasoned that although the title "minister" is relevant to the analysis, "such a title is neither necessary nor sufficient." *Hosanna-Tabor*, 132 S. Ct. at 713.

- Offer regular intercession and prayer for directees and staff team
- Pray with other directors
- Provide resources to staff to cultivate deeper prayer lives
- Minister to staff who serve students and faculty
- Provide training, resources, and pastoral care and development for staff
- Lead prayer teams at local conferences
- Be in spiritual direction and offer spiritual direction to employees seeking to grow in Christ and learn how to reflect the image of Christ in their daily lives and ministry
- Listen, discern, and pray with employees and offer guidance about the direction of their lives

*See* Exh. 2.

Plaintiff's duties were almost exclusively religious. Aside from limited tasks which included administration and fund development, Plaintiff's time as a Spiritual Formation Specialist was spent either in prayer for herself or others, in preparation for conferences where she led prayer teams, or in spiritual direction of other employees within IVCF. It is evident that Plaintiff's duties included "supervision or participation in religious ritual and worship", *Hollins*, 474 F.3d at 226, and that she "serve[d] as a messenger or teacher of [the] faith", *Hosanna-Tabor*, 132 S. Ct. at 712, espoused by IVCF. Plaintiff clearly held a ministerial position at IVCF.

## CONCLUSION

Court-ordered employment decisions within a religious organization directly implicate the doctrine of ecclesiastical abstention. Disputes between a religious organization and its ministers over decisions made by the organization are best governed by religious doctrine and organizational policies.

The First Amendment limits court-ordered remedies to the extent that they conflict with a religious organization's First Amendment rights. The remedies sought by Plaintiff in her Complaint are barred by the doctrine of ecclesiastical abstention. Therefore, the Court must dismiss Plaintiff's Complaint for failure to state a claim able to be remedied by this Court.

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint should be granted.

Respectfully submitted,

November 20, 2013          By: /s/ Edward L. White
                           Edward L. White, III (P62485)
                           AMERICAN CENTER FOR LAW & JUSTICE
                           3001 Plymouth Road, Suite 203
                           Ann Arbor, Michigan 48105
                           (Tel) 734-680-8007
                           ewhite@aclj.org

                           David A. French
                           Abigail A. Southerland
                           Michelle K. Terry
                           AMERICAN CENTER FOR LAW & JUSTICE
                           118 Front Street, Ste. 116-19
                           Franklin, Tennessee 37064
                           (Tel) 800-296-4529
                           dfrench@aclj.org
                           asoutherland@aclj.org
                           mkterry@aclj.org

                           *Attorneys for the Defendants*